IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| R. WAYNE KLEIN, as RECEIVER for NATIONAL NOTE OF UTAH & NATIONAL NOTE ENTERPRISE<br><br>Plaintiff,<br><br>v.<br><br>EDDA NELSON,<br><br>Defendant. | **ORDER AND MEMORANDUM DECISION**<br><br><br>Case No. 2:13-cv-497-TC |

Plaintiff R. Wayne Klein, in his role as the court-appointed Receiver in a Securities and Exchange Commission (SEC) enforcement action, seeks to recover $50,051.22 from Defendant Edda Nelson in this ancillary proceeding.[1] In the primary action, National Note of Utah (NNU) is accused of operating a Ponzi scheme defrauding hundreds of investors. On behalf of the receivership estate, Mr. Klein filed a motion to recover what he characterizes as false profits. Mr. Klein brings his claim for recovery of false profits in the amount of $50,051.22 from Ms. Nelson under the Utah Fraudulent Transfer Act (UFTA).[2] He also seeks recovery for unjust enrichment. Ms. Nelson claims that not all of the transfers were fraudulent, including hers, and that the Receiver has not made the necessary distinction between valid transfers and avoidable transfers.

---

[1] Mr. Klein is the Receiver of National Note of Utah, LC, its subsidiaries and affiliates, and the assets of Mr. Wayne LaMar Palmer in the Securities and Exchange Commission v. National Note of Utah, LC et al. action, currently before Judge Jenkins (No. 2:12-cv-00591).
[2] Utah Code Ann. §§ 25-6-1 – 25-6-14 (2013).

1

For the reasons set forth below, the court grants the Receiver's motion on the UFTA claims and denies the Receiver's request for unjust enrichment as moot. The court also denies the Defendant's motion for additional discovery.

## FACTUAL BACKGROUND

According to NNU, NNU's business model secured each investor's principal with real property in a one page instrument signed before a public notary. This one page instrument pretended to assure full repayment of the principal and to allow the investor to foreclose on the property in order to obtain the return of the principal amount. The real property, NNU claims, was always worth more than the money invested to secure it.

NNU also engaged in actions designed to attract investors. For example, NNU operated what may have once been legitimate affiliates called NNU Enterprise. Funds from NNU allegedly were comingled with NNU Enterprise to promote the investment scheme. But because NNU and NNU Enterprise were insolvent, these businesses had no money to pay investors. (Doc. No. 13-6 at 3.)

In 2006, Ms. Nelson transferred $150,000 to NNU. In total, NNU transferred $200,051.12 to Ms. Nelson. Discounting her principal, Ms. Nelson profited by $50,051.22.

The SEC filed a civil enforcement action against NNU in June 2012 and seized NNU's assets and records. The SEC accuses Mr. Wayne Palmer, the founder and principal of NNU, of operating NNU as a classic Ponzi scheme since at least 1994. NNU's records show that investors were paid with the funds of new investors. Ms. Nelson' payments allowed her to recover her principal investment and an additional $50,051.22.

On behalf of the receivership estate, Mr. Klein seeks the return of $50,051.22 in fraudulently transferred funds to Ms. Nelson who profited from the scheme.

## ANALYSIS

I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). Further, the court must draw all reasonable inferences in favor of the nonmoving party when examining the record. Anderson, 477 U.S. at 250. While Mr. Klein bears the burden of demonstrating there are no material facts upon which a jury could find for Ms. Nelson, Ms. Nelson's burden is to establish a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). But "a mere scintilla of evidence supporting the nonmoving party theory does not create a genuine issue of material fact." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) (emphasis added).

II. Utah Fraudulent Transfer Act (UFTA)

Under the UFTA, the Receiver relies on three alternative sections to establish a fraudulent transfer. A transfer is fraudulent when the debtor 1) had actual intent to defraud (Utah Code Ann. § 25-6-5(1)(a) (2013)); 2) incurred the obligation without receiving a reasonably equivalent value for the transfer and intended to incur or reasonably should have believed he would incur debts beyond his ability to pay as they became due (Utah Code Ann. § 25-6-5(1)(b) (2013)); or 3) did not receive a reasonably equivalent value for the transfer and was insolvent at the time of

3

the transfer (Utah Code Ann. § 25-6-6(1)(b) (2013)). Although the Receiver cites all three sections, the court need only focus on the "actual intent" portion of the statute (Utah Code Ann. § 25-6-1(1)(a) (2013)) because the transfer was made in the context of a Ponzi scheme.

### III. NNU's Operation as a Ponzi Scheme

According to Mr. Palmer, who was chiefly responsible for the operation of NNU, NNU's business model used loans made to NNU by individuals to pay dividends to earlier loaners. Although not an accountant, Mr. Palmer states that the Receiver has undervalued the assets of NNU. Mr. Palmer also claims that the Receiver fails to understand the complexities of the NNU business model.

Conversely, the Receiver's expert, a Certified Public Accountant and an expert on insolvency, determined that NNU could only have paid dividends with the funds of other investors because NNU was insolvent. Moreover, the Receiver's expert bases his conclusion that NNU operated as a Ponzi scheme upon the records of NNU. NNU's records show that when money from later investors came into NNU, it was immediately paid to earlier investors. Whatever legitimate funds NNU and NNU Enterprise may have had were commingled with the NNU Ponzi operation.

Ponzi schemes operate by attracting capital from one backer and transferring a portion of that capital to earlier backers. See S.E.C. v. Mgmt. Solutions, Inc., No. 2:11-CV-1165, 2013 WL 4501088, at *14 (D. Utah Aug. 22, 2013). Regardless of the label of the backer or name of the transferred portion, the essential operation is the same: money from backer C enters the accounts of the operator; the operator pays a portion of that sum to backers A and B.  That business model

is a Ponzi scheme by definition. The evidence clearly indicates that NNU was operated as a Ponzi scheme. No admissible evidence has been presented to the contrary.

    IV. The Ponzi Presumption

Under the UFTA, the mere existence of a Ponzi scheme is sufficient to establish a defendant's actual intent to defraud. Miller v. Kelley, No.1:12-CV-56, 2014 WL 5437023, at *3 (D. Utah Oct. 27, 2014). The Ponzi Presumption, once established, allows a receiver to reclaim all transfers to a defendant who received money from the scheme. Id.  The central issue before the court is whether the Ponzi presumption should be applied in this case.

    V.  The Ponzi Presumption Applies

The facts before the court walk in near lock step with the facts that were before the Miller court. In Miller, the defendant invested in a Ponzi scheme and received payments from the operator of the scheme. Id. at *2. The Miller receiver used the principal operator's records to establish the existence of a Ponzi scheme. Seeking to recover funds distributed to the defendant under the UFTA, the Miller receiver petitioned for summary judgment. Id. The Miller defendant attempted to resist summary judgment by 1) requesting additional time for discovery and 2) asserting that the Miller receiver had to distinguish between legitimate and fraudulent transfers.

On the discovery issue, the Miller defendant could not identify steps taken to discover facts before the initial discovery period had concluded. Further, the Miller defendant could not explain how additional time would allow for the discovery of facts to support his assertions. Id. at *4. The Miller court denied the defendant's request for time to conduct additional discovery because the Miller defendant failed to identify not only which facts were not presently available but also which facts would be necessary to defeat summary judgment. Id. at *5.

Next, citing <u>Management Solutions</u>, the defendant in <u>Miller</u> asserted that the receiver must distinguish each transaction as either legitimate or fraudulent. According to the <u>Miller</u> defendant, <u>Management Solutions</u> limited the Ponzi presumption to each transfer and did not apply to the business venture as a whole because there was an underlying business producing legitimate sources of revenue. <u>Id.</u>

But the <u>Miller</u> court soundly rejected these arguments. First, Ponzi schemes have been found even when there is a legitimate business serving as a front for the scheme. <u>Id.</u> at *7 (citing <u>Jobin v. McKay</u>, 84 F.3d 1330, 1332 (10th Cir. 1996); <u>Sender v. Simon</u>, 84 F.3d 1299, 1301-02 (10th Cir. 1996)). Second, when there exists a legitimate operation as a front for Ponzi activity and funds are commingled, the Ponzi presumption applies. <u>See id.</u> Third, the <u>Miller</u> court determined that <u>Management Solutions</u> was distinguishable because <u>Management Solutions</u> involved a business that engaged in erratic Ponzi-like activity, whereas the Ponzi operation in <u>Miller</u> consistently operated at a loss each year, even while making payments to defendants. <u>Id.</u> Consequently, the <u>Miller</u> court granted the <u>Miller</u> receiver's motion for summary judgment. <u>Id.</u> at 8.

Here, just as the defendant in <u>Miller</u> invested in a Ponzi scheme and was fortunate enough not only to recoup the principal investment and a dividend in excess of that principal, Ms. Nelson was equally fortunate to recover in excess of her principal. And just as the <u>Miller</u> receiver consulted the records of the operation to establish the transfers were fraudulent and reclaim them for the receivership estate under the UFTA, Mr. Klein likewise relies on NNU's records as the basis for his motion to show that NNU was insolvent and that the transfers were fraudulent under the UFTA. And just as the <u>Miller</u> receiver petitioned for summary judgment in order to recover

an amount in excess of the principal, likewise Mr. Klein moves for summary judgment to recover false profits from Ms. Nelson for the receivership estate.

VI. Ms. Nelson's Request for Additional Discovery

Similar to the Miller defendant, Ms. Nelson seeks to delay summary judgment by requesting a stay to conduct additional discovery. Yet just as the Miller defendant failed to justify additional time for discovery, Ms. Nelson has not explained which facts are needed for discovery so as to defeat summary judgment. She has neither adequately explained what steps were taken to discover those facts, nor explained why such facts could not be presented before the initial close of discovery. And just as the Miller defendant could not provide facts necessary to defeat summary judgment, Ms. Nelson relies merely on her own statements and Mr. Palmer's unsupported assertions to defeat summary judgment.

VII. Ms. Nelson's Reliance on *Management Solutions*

Most interesting of all, Ms. Nelson also stakes her argument on Management Solutions, just as the Miller defendant did. Ms. Nelson claims at least some of the payments were from legitimate sources because NNU operated as a legitimate payday loan business at least some of the time.

Yet the facts do not support Ms. Nelson's assertion. Unlike the Ponzi operation in Management Solutions, NNU did not engage in erratic Ponzi-like activity. NNU operated consistently as a Ponzi scheme and is most comparable to the Ponzi operation in Miller. Just as the Ponzi operation in Miller never earned enough money to pay its investors, NNU was never profitable.

CONCLUSION

There are no disputed facts in evidence, and the evidence overwhelmingly demonstrates that the promissory notes issued to Ms. Nelson did not secure real property in exchange for receipt of Ms. Nelson's investment. Further, according to NNU's records and the Receiver's expert's report, NNU did not provide a reasonable equivalent for transfers received, NNU was insolvent, and NNU used money from later investors to pay earlier investors. That is the very definition of a Ponzi scheme. The transfer then is fraudulent under the UFTA § 25-6-1(1)(a) (2013) and is recoverable under the UFTA § 25-6-8(1)(a) (2013).

The Receiver's Motion for Partial Summary Judgment (Doc. No. 13) is GRANTED as to the UFTA claims but DENIED as to the unjust enrichment claim because that claim is moot. Ms. Nelson's request for additional discovery is DENIED.

ORDERED this 28th day of July, 2015.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge